1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

7

### EASTERN DISTRICT OF CALIFORNIA

8

| | |
|---|---|
| CHRISTOPHER MILLER, | )  1:04cv6683 DLB |
| ) | |
| ) | |
| Plaintiff, | )  ORDER REGARDING PLAINTIFF'S<br>)  SOCIAL SECURITY COMPLAINT |
| ) | |
| v. | ) |
| ) | |
| JO ANNE B. BARNHART, Commissioner | ) |
| of Social Security, | ) |
| ) | |
| ) | |
| Defendant. | ) |
| ) | |

16

17

## __BACKGROUND__

18      Plaintiff Christopher Miller ("Plaintiff") seeks judicial review of a final decision of the

19   Commissioner of Social Security ("Commissioner") denying his application for social security

20   income pursuant to Title XVI of the Social Security Act.  The matter is currently before the Court

21   on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L.

22   Beck, United States Magistrate Judge.[1]

23   ///

24   ///

25

26

27   _____

28      [1] The parties consented to the jurisdiction of the United States Magistrate Judge.  On April 21, 2005, the
Honorable Oliver W. Wanger reassigned the case to the undersigned for all purposes.

1

## FACTS AND PRIOR PROCEEDINGS[2]

2      Plaintiff filed an application for supplemental security income on November 5, 2002,

3  alleging disability since May 24, 2002, due to diabetes.  AR 84-87, 92-101.  After being denied

4  both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative

5  Law Judge ("ALJ").  AR 70-73, 75-78, 79.  On February 25, 2004, ALJ David E. Flierl held a

6  hearing and on August 24, 2004, denied benefits.  AR 28-56, 10-17.  The Appeals Council

7  denied review on November 23, 2004.  AR 4-7.

8      Hearing Testimony

9  _____ALJ Flierl held a hearing on February 25, 2004, in Fresno, California.  Plaintiff appeared

10  with his attorney, Robert Christenson.  AR 28.

11      Plaintiff testified that he was born in 1942, and was currently 6 feet tall and weighed

12  about 270 pounds.  AR 31.  He completed the twelfth grade and can read and write.  He has not

13  worked in the past 15 years.  AR 32.

14      When asked by his attorney why he could not work, Plaintiff explained that he has tried

15  to find a job but has been unable to do so.  AR 41-42.  He can walk and feels better, but gets

16  short of breath.  AR 42.  He testified that his shortness of breath does not keep him from

17  performing work activity, but he can work out for about 10 minutes and then needs to take a

18  break.  AR 42.

19      Plaintiff has diabetes and is taking medication for it, as well as iron.  AR 42-43.  His

20  diabetes causes shortness of breath and fatigue.  AR 43.  He thought he could lift 20 pounds for

21  two to three hours out of the workday.  AR 43.  He can walk a mile right now, but indicated that

22  he would get back up to four miles a day.  AR 44.  He can stand, but feels better if he keeps

23  walking.  AR 44.  He gets tired and his legs hurt a little when he stands.  AR 44.  He can sit but

24  gets stiff if he sits for over 30 minutes.  AR 44, 49.  He can bend and stoop without problems as

25  long as he doesn't do too much of it.  AR 44.  He gets sore, stiff and out of breath if he does it

26  too much.  AR 45.

27  ─────────────────

28      [2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

He has no side effects from his medications.  AR 45.  Plaintiff tests his blood sugar everyday, and it ranges from 240-250 to 140.  AR 45.  His doctors tells him to try to keep it under 200.  AR 46.

Plaintiff has been taking iron pills for anemia for the past three months.  He feels better and sees a difference when he takes the pills.  AR 46.

He works around the house and the yard a little during the day.  AR 47.  Weedeating and mowing the lawn causes shortness of breath.  AR 48.

Medical Evidence

On May 25, 2002, Plaintiff saw treating physician Jack Gregory, M.D.  Plaintiff complained that he had been dizzy, had numbness in his hands and occasional chest pain for two weeks.  Dr. Gregory diagnosed Plaintiff with diabetes mellitus and prescribed medication.  AR 136.

Plaintiff saw consultive examiner Vinay K. Buttan, M.D., on December 11, 2002.  His chief complaint was that he did not feel good.  Plaintiff explained that he was diagnosed with diabetes in 2002, and his blood sugar was still out of control.  He indicated that he was not following his diet or taking his medications properly.  Plaintiff reported that because of his diabetes, he lacks energy and gets tired after he walks a few miles.  He denied any joint pain.  His physical examination was normal, and Dr. Buttan diagnosed Plaintiff with uncontrolled diabetes mellitus and being overweight (6 feet tall, 294 pounds).  Dr. Buttan opined that his main problem was diabetes, which "should be able to be controlled with the medications, diet and exercise."  In an eight hour day, Plaintiff could sit, stand, or walk for about five or six hours without problem.  AR 131-132.

On December 18, 2002, State Agency physician Sadda Reddy, M.D., completed a Physical Residual Functional Capacity Assessment form.  Dr. Reddy opined that Plaintiff had no exertional limitations.  He could never climb ladders/ropes/scaffolds, but had no other postural limitations.  He had to avoid work at unprotected heights and near dangerous machinery because of his history of dizziness.  AR 148-156.

On January 22, 2003, Dr. Gregory noted that Plaintiff's diabetes was out of control.  AR 134.

On April 29, 2003, State Agency physician Ernest Wong, M.D., completed a Physical Residual Functional Capacity Assessment form.  He opined that Plaintiff had no exertional limitations.  He could never climb ladders/ropes/scaffolds, but had no other postural limitations. Plaintiff had to avoid exposure to unprotected heights because of his history of dizziness.  AR 139-146.

Plaintiff saw Dr. Gregory on July 18, 2003.  He diagnosed anemia, rectal bleeding and diabetes.  Dr. Gregory prescribed an iron supplement to treat his anemia.  AR 158.  July 2003, testing revealed a normal colon and terminal ileum.  AR 157.

On December 30, 2003, Dr. Gregory instructed Plaintiff to restart his iron supplement therapy.  AR 163.

On February 10, 2004, Dr. Gregory completed a "Diabetes Mellitus Residual Functional Capacity Questionnaire."  He had seen Plaintiff monthly for the past two years and diagnosed Plaintiff with diabetes and anemia.  He described Plaintiff's prognosis as good and indicated that his symptoms were fatigue, general malaise and muscle weakness.  He indicated, however, that Plaintiff's impairments lasted, or were expected to last, for at least 12 months and that he was incapable of performing even a loss stress job because his "weakness on occasion is profound." He opined that Plaintiff could walk for one to two blocks at a time, sit for 30 minutes at a time and stand for 30 minutes at one time.  He could stand/walk for a total of two hours in an eight hour day.  He stated that Plaintiff would need to take unscheduled breaks one to two hours per day, for one hour at a time.  Plaintiff could occasionally lift and carry up to five pounds and could never carry over 20 pounds.  Plaintiff could never twist, stoop, crouch, climb, balance, kneel or crawl, and had significant limitations in reaching, handling or fingering.  He had to avoid all exposure to extreme heat and cold, high humidity, fumes, odors, dusts and gases.  AR 122-125.

ALJ's Findings

After reviewing the evidence, the ALJ determined that Plaintiff did not have a severe impairment.  The ALJ explained that Plaintiff failed to provide objective medical evidence from

4

1  his treating physician, Dr. Gregory, or any other source, to establish that his anemia lasted

2  continuously or that it is expected to last continuously for a period of 12 months.  AR 16.

3  Plaintiff also failed to provide objective medical evidence establishing that he has any end-organ

4  damage or limitations resulting from his diabetes mellitus.  AR 16.

5  **SCOPE OF REVIEW**

6       Congress has provided a limited scope of judicial review of the Commissioner's decision

7  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

8  the Court must determine whether the decision of the Commissioner is supported by substantial

9  evidence.  42 U.S.C. 405(g).  Substantial evidence means "more than a mere scintilla,"

10 *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

11 *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

12 reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

13 401.  The record as a whole must be considered, weighing both the evidence that supports and

14 the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

15 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

16 apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

17 This Court must uphold the Commissioner's determination that the claimant is not disabled if the

18 Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

19 substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

20 Cir. 1987).

21 **REVIEW**

22      In order to qualify for benefits, a claimant must establish that he is unable to engage in

23 substantial gainful activity due to a medically determinable physical or mental impairment which

24 has lasted or can be expected to last for a continuous period of not less than 12 months.  42

25 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

26 such severity that he is not only unable to do her previous work, but cannot, considering his age,

27 education, and work experience, engage in any other kind of substantial gainful work which

28 exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

1  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

2  Cir. 1990).

3        In an effort to achieve uniformity of decisions, the Commissioner has promulgated

4  regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

5  C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3]  Applying this process in this case, the ALJ

6  found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of

7  disability; and (2) does not have an impairment or a combination of impairments that is

8  considered "severe."  Based on this, the ALJ determined that Plaintiff was not disabled.

9        Plaintiff argues that the ALJ (1) erred in failing to adopt all of the treating physician's

10  opinions; (2) erred in failing to recontact the treating physician; (3) erred in finding that

11  Plaintiff's diabetes and anemia were non-severe; (4) erred in failing to find that the Grids

12  supported a finding of disability; and (5) erred in failing to find that Plaintiff's obesity was a

13  severe impairment.

14                              **DISCUSSION**

15  A.    Treating Physician's Opinions

16        Plaintiff faults the ALJ for accepting part, but not all, of Dr. Gregory's restrictions set

17  forth in his February 2004 questionnaire.  Specifically, Plaintiff contends that the ALJ improperly

18  rejected Dr. Gregory's opinion that Plaintiff's condition was expected to last 12 months and that

19  he was incapable of even a low stress position.

20        It is true that the medical opinion of a claimant's treating physician is entitled to "special

21  weight."  *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988); *Valencia v. Heckler*, 751 F.2d

22  1082, 1088 (9th Cir. 1985).  Reliance on the opinion of the treating physician is based not only

23  on the fact that he is employed to cure but also on his greater opportunity to observe and know

24  the patient as an individual.  However, a treating physician's opinion is not conclusive as to a

25  physical condition or the ultimate issue of disability.  *Magallanes*, 881 F.2d at 751, and *Matney v.

26  Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  An ALJ may reject a contradicted treating

27  ────────────

28        [3] All references are to the 2000 version of the Code of Federal Regulations unless otherwise noted.

                                    6

physician's opinion on the basis of clear findings that set out specific, legitimate, reasons for the rejection. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

In reviewing Dr. Gregory's questionnaire, the ALJ explained that "[g]iven the extent of limitations assigned to the claimant by Dr. Gregory secondary to weakness from anemia, it is reasonable to presume that the limitations outlined in Dr. Gregory's opinion are an expression of the claimant's symptoms during one of the 'profound' periods of weakness." AR 15.  The ALJ further explained that Dr. Gregory did not assign any limitations to Plaintiff's diabetes and that he indicated that Plaintiff's prognosis was "good." AR 15.  The ALJ used Dr. Gregory's questionnaire to determine that Plaintiff's anemia was not severe.  He noted that the prognosis of "good" was consistent with the records that indicate that Plaintiff's hemoglobin improved after treatment with iron supplements.  AR 15.

Indeed, the ALJ need not believe everything a physician sets forth, and may accept all, some, or none of the physician's opinions. *Magallanes*, 881 F.2d at 753-754.  Here, the ALJ properly rejected the portions of Dr. Gregory's opinion that suggested a severe impairment because they were inconsistent with the medical record.  *Burkhart v. Bowen*, 856 F.2d 1335, 1339-1340 (9th Cir. 1988).  As the ALJ determined, nothing in the record suggests that Plaintiff's anemia and its resultant weakness would last continuously for a period of 12 months.  As the record demonstrates, Plaintiff was diagnosed with anemia and started on iron supplement therapy in July 2003, and was not seen again until December 2003.  AR 158, 163.  In December 2003, Plaintiff was instructed to restart his iron supplement therapy.  In February 2004, Dr. Gregory filled out the questionnaire.  It was logical for the ALJ to infer that Plaintiff's anemia would improve in less than six months, based on the fact that Plaintiff did not seek treatment between July 2003 and December 2003 and that the iron supplement therapy improved his hemoglobin.  AR 160, 163.  *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (an ALJ is entitled to draw inferences logically flowing from the evidence).

The ALJ therefore set forth specific and legitimate reasons for rejecting the opinion of Dr. Gregory regarding the severity of Plaintiff's impairments.

1    B.    Recontacting Dr. Gregory

2         Next, Plaintiff argues that the ALJ should have recontacted Dr. Gregory in light of Dr.

3    Gregory's statement that Plaintiff's prognosis was "good," versus his statement that Plaintiff's

4    impairments lasted, or could be expected to last, for at least 12 months.  He also contends that

5    Dr. Gregory's description of Plaintiff's weakness as "profound on occasion" is vague.

6         In support of his argument, Plaintiff cites 20 C.F.R. § 416.912(e)(1), which provides that

7    when the evidence received from a treating physician is inadequate, the adjudicator shall first

8    recontact the treating physician to "seek additional evidence or clarification from your medical

9    source when the report from your medical source contains a conflict or ambiguity that must be

10   resolved, the report does not contain all the necessary information."

11        Plaintiff points to his testimony that he saw Dr. Gregory more often than is evidenced by

12   the records.  He also points to Dr. Gregory's February 2004 statement that he had seen Plaintiff

13   monthly for the past 2 years.  AR 122.  First and foremost, it is Plaintiff's burden to produce full

14   and complete medical records, not the Commissioner's.  *Meanel v. Apfel,* 172 F.3d 1111, 1113

15   (9th Cir. 1999).

16        Second, the terms of section 416.912(e) provide that a treating physician will be

17   recontacted only where the evidence is *inadequate.*  Similarly, an ALJ's duty to develop the

18   record is triggered only when the evidence is ambiguous or "the record is inadequate" to allow

19   for proper evaluation of the evidence.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th

20   Cir.2001).

21        Here, no such inadequacy or ambiguity existed.  Indeed, given the overall benign findings

22   in the medical evidence, it is unlikely that any additional medical records would paint another

23   picture.  In any event, the evidence supported the ALJ's conclusion.  Consultive examiner Dr.

24   Buttan opined that Plaintiff's main problem was diabetes and that it should be able to be

25   controlled with medication, diet and exercise.  Dr. Buttan did not impose any significant

26   limitations.  AR 131-132.  Two State Agency physicians reviewed Plaintiff's medical records

27   and concluded that although Plaintiff had slight postural and environmental limitations, he had

28   no exertional limitations.  AR 139-146, 149-156.  Insofar as Dr. Gregory's questionnaire

1  suggests otherwise, the Court has determined that the ALJ properly rejected these opinions.  The

2  record indicates that Plaintiff's diabetes would be controlled if he complied with medication and

3  diet, yet Plaintiff admitted that he did neither.  AR 131-132.  Similarly, Plaintiff's anemia

4  appeared to respond to iron supplement therapy.  AR 160, 163.

5          Based on this evidence, the record was not inadequate or ambiguous so as to prevent the

6  ALJ from proper analysis.

7  C.      Non-Severity

8          Next, Plaintiff argues that the ALJ erred in finding his anemia and diabetes non-severe

9  impairments.  He contends that the limitations imposed by Dr. Gregory indicate that these

10  impairments are severe.

11         Plaintiff bears the burden of proving that he is disabled.  *Meanel v. Apfel*, 172 F.3d 1111,

12  1114 (9th Cir. 1999); 20 C.F.R. § 404.1512.  A person is disabled if his impairments are severe

13  and meet the durational requirement of twelve months.  20 C.F.R. §§ 404.1505, 404,1520(a).  A

14  severe impairment is one that significantly limits the physical or mental ability to perform basic

15  work activities.  20 C.F.R. § 404.1520(c).  Examples of basic work activities include carrying out

16  simple instructions, responding appropriately to usual work situations, dealing with changes in a

17  routine work setting, and performing ordinary physical functions like walking and sitting.  20

18  C.F.R. § 404.1521(b).

19         An impairment or combination of impairments is found "not severe" and a finding of "not

20  disabled" is made at step II if the medical evidence establishes only a slight abnormality or a

21  combination of slight abnormalities which would have no more than a minimal effect on an

22  individual's ability to work, even if the individual's age, education, or work experience were

23  specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his

24  or her physical or mental ability(ies) to perform basic work activities).  SSR 85-28.  In

25  determining whether an impairment or combination of impairments is "severe," an ALJ should

26  carefully examine the medical findings that describe the impairments and make an "informed

27  judgment" about the limitations and restrictions the impairment and related symptoms impose on

28  the person's physical and mental ability to do basis work activities.  SSR 96-3p.

1    In reviewing Plaintiff's medical records, the ALJ noted that Dr. Buttan found no

2    deformities in any joint, a normal range of motion in his joints, and normal grip strength and gait.

3    Plaintiff had no muscular atrophy and did not use an assistive device for ambulation.  AR 14,

4    131-132.  As a result, Dr. Buttan did not impose any significant limitations.  AR 131-132.  In

5    July 2003, when Plaintiff was diagnosed with anemia, he indicated that he had no pain and that

6    his appetite was good.  AR 158.  Testing revealed a normal colon and terminal ileum.  AR 14.

7    There is a gap in treatment until December 2003, when he hemoglobin level had improved and

8    he was restarted on iron supplemental therapy.  AR 163.  The ALJ further noted that Plaintiff

9    failed to produce any evidence that established that he had any end-organ damage or limitations

10   resulting from his diabetes.  AR 16.

11   Plaintiff's own statements seem to support the ALJ's interpretation.  When contacted by a

12   Social Security analyst in November 2002, Plaintiff indicated that he was taking medications

13   without complications and denied any problems with his vision, kidneys, heart or feet.  AR 110.

14   He felt that "his age and lack of jobs" prevented him from working.  When the ALJ asked him if

15   these were the reasons he could not work, he responded, "correct."  AR 52.  The ALJ stated,

16   "What about your diabetes," to which Plaintiff eventually replied, "I just - I get tired easy still

17   and stuff."  AR 52.  When his attorney asked him why he could not work, Plaintiff explained that

18   he was unable to find work and that he had "tried and tried."  AR 41-42.  It therefore appears that

19   Plaintiff himself believed he could work.

20   Given the above evidence, Plaintiff's argument that the ALJ erred in finding his ailments

21   non-severe is without merit.

22   D.    Use of Grids

23   In a very short argument, Plaintiff contends that the ALJ erred in failing to find that the

24   Grids supported a finding of disability, given his age, past relevant work, and a limitation to

25   sedentary work.  However, as the Court has determined that the ALJ correctly found that Plaintiff

26   did not have any severe impairments, the Court will not reach the issue of Grid applicability.

27

28

1  E.      Plaintiff's Obesity

2          Finally, Plaintiff contends that the ALJ erred in not finding his obesity a severe

3  impairment.  He contends that his obesity, when taken into consideration with his diabetes and

4  anemia, supports Dr. Gregory's limitations.  Plaintiff points to Dr. Buttan's diagnosis of being

5  overweight and the State Agency physicians' calculation of Plaintiff's Body Mass Index.

6          Pursuant to SSR 02-1p, obesity must be considered throughout the sequential evaluation

7  process, including when determining an individual's RFC.  "The combined effects of obesity

8  with other impairments may be greater than might be expected without obesity."  SSR 02-1p.

9  The Ninth Circuit recently held that, pursuant to SSR 02-1p, the ALJ must consider obesity in

10  determining RFC based on the information in the case record.  *Burch v. Barnhart*, 400 F.3d 676,

11  683 (9th Cir. 2005).

12          Although the record includes notations of Plaintiff's weight and Dr. Buttan's diagnosis of

13  Plaintiff as overweight, neither Plaintiff nor the record points to any resulting limitations.  The

14  mere diagnosis of an impairment is not sufficient to sustain a finding of disability.  *Key v.*

15  *Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).  Indeed, even Dr. Buttan, who was obviously

16  aware of Plaintiff's weight, opined that Plaintiff could sit, stand, or walk for about five or six

17  hours without problem.  AR 131-132.  An "ALJ is not required to discuss the combined effects

18  of a claimant's impairments or compare them to any listing in an equivalency determination,

19  unless the claimant presents evidence in an effort to establish equivalence."  *Id.*

20                                          **CONCLUSION**

21          Based on the foregoing, the Court finds that the ALJ's decision is supported by

22  substantial evidence in the record as a whole and is based on proper legal standards.

23  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the

24

25

26

27

28

Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff, Christopher Miller.


    IT IS SO ORDERED.

    **Dated:**   **October 31, 2005**            **/s/ Dennis L. Beck**
3b142a                       UNITED STATES MAGISTRATE JUDGE